IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-cv-60116-WPD

**NICHOLAS DAVIS**,

    **Plaintiff,**

v.

**EAST COAST WAFFLES, INC. d/b/a WAFFLE HOUSE**,

    **Defendant.**

## MOTION TO COMPEL WITH SUPPORTING MEMORANDUM OF LAW

Plaintiff, NICHOLAS DAVIS (hereafter "DAVIS") hereby files this motion to compel and request that this Court Order Defendant EAST COST WAFFES (hereafter "WAFFLE HOUSE") to produce video evidence of the accident on the subject Premises within ten days. In support of Plaintiff's Motion to Compel, is this incorporated memorandum of law:

### MEMORANDUM OF LAW

On March 7, 2015, Plaintiff propounded filed a first Request For Production of Documents And Things From Defendant, Waffles House, Inc. (now amended to East Cost Waffles, Inc.). The Defendant argues that the video of Plaintiff DAVIS falling is work-product without explanation, but cites *Bolitho v. Home Depot USA, Inc.*, 2010 WL 2639639 (S.D. Fla. 2010). Plaintiff's request 14 asks for:

> Any and all photographs, movies, charts, and other documentary evidence of the scene, parties, or vehicles involved in or pertaining to the subject accident, occurrences or issues in this case, including without limitation taken in connection with the accident identified in the Complaint.

Defendant objects only on the basis that the request is "overly broad in scope" and "seeks information protected by work product privilege." Plaintiff cites only to *Bolitho v. Home Depot USA, Inc.*, 2010 WL 2639639 (S.D. Fla. 2010), which is attached hereto as Exhibit "A". Accordingly, Defendant WAFFLE HOUSE has waived all other possible objections and arguments.

**I.      The Video is Not Work-Product**

The work product doctrine was created to protect "unwarranted inquiries into the files and mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). That doctrine has now been incorporated into the Federal Rules of Civil Procedure, Rule 26(b)(3), which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . [unless] the party shows it has substantial need of the materials. . . and cannot, without undue hardship, obtain their substantial equivalent by other means."

The Plaintiff asks this Court to adopt the holding in *Target Corp. v. Vogel*, 41 So. 3d 962 (Fla. 4th DCA 2010) and subsequently in in the *Sowell v. Target Corp.*, 5:14-cv-00093-RS-GRJ [D.E. 21] (the *Sowell* holding is attached hereto as Exhibit "B"). In *Vogel*, the injured party requested to see the video of her fall prior to her deposition. Target objected arguing that this request was work-product, or at least should not be produced until after her deposition. The Court distinguished between a video of the actual incident and a surveillance video taken after the incident. The video of the actual incident was held as not work-product and therefore must be turned over.

Like Vogel, the key factor in this case is whether the video was taken contemporaneously with the incident that gave rise to the Complaint. In this case, it was. The video was not created

at the Request of Defendant, or its counsel, in order to surveil Plaintiff DAVIS following his injury.

Accordingly, based on the plain language of Rule 26(b)(3), the video in dispute is not work-product because it was not prepared in anticipation of litigation or trial, but instead was prepared in the regular course of business to prevent theft and reduce crime.

There are a number of reasons that preventing or delaying the disclosure of the instant video becomes a dangerous precedent.  First, Defendant had an affirmative duty to preserve the material.  And Plaintiff DAVIS has already long waited for the video, which can be used to identify and locate relevant witnesses.  The longer it takes for Plaintiff DAVIS to receive the video, the more likely that Plaintiff's counsel will not be able to locate those relevant witnesses that are necessary and/or helpful in the prosecution of this claim.  Additionally, as discussed below, the videotape helps to promote truth-seeking, settlement, and prevents an unfair advantage to the employees and managers of Waffle House that have the benefit of viewing the video of the subject Premises.

**II.      Distinguishing *Bolitho v. Home Depot*  Because Plaintiff Returned After the Incident**

In *Bolitho v. Home Depot*, no. 10-60053-CIV-Cohn/Seltzer, 2010 WL 2639639 (S.D. Fla. June 3, 2010), the Court held that the surveillance video of a slip and fall injury was protected work product because the plaintiff returned to the store two hours later to report the incident, which caused the Defendant to copy and preserve the surveillance video.   In Contrast, both *Schulte v. NCL (Bahamas) Ltd.*, no.10-23263-VIC, 2011 WL 256542 (S.D. Fla. Jan. 25, 2011) and *Sowell v. Target Corp.*, no. 5:14-cv-00093-RS-GRJ (N.D. Fla. May 28, 2014) held that video of a slip and fall video was created in the ordinary course of business and not in anticipation of litigation.

The Court in *Schulte*, and relied upon by *Sowell*, wrote that:

> It would anomalous, to say the least, if by ordering a client to preserve evidence created in the ordinary course of business, in anticipation of litigation, counsel was able to shield that evidence from production based upon work product protection.

*Schulte*, at *3. "A document or thing is subject to work product protection when the proponent of the privilege demonstrates that at the time the document or thing was prepared the entity anticipated litigation" but that "materials prepared in the ordinary course of business are not protected." *Sowell*, at p. 4 (citing *CSX Transp., Inc. v. Admiral Ins Co.*, 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995).

As in the cases before it, there is no evidence that the store surveillance video system was implemented or created because of the prospect of litigation. "Common sense" dictates that the video surveillance implemented by Defendant Waffle House was used to prevent and detect theft and crime by customers and store employees alike. *See Sowell*, at pp. 4-5.

## III.    Delayed Disclosure Cannot Be Solely for Impeachment Purposes

Defendant argued only that the video was withheld due to work-product. Accordingly, Defendant Waffle House has waived all other objections for the delay by failing to raise those arguments in its response for the request to produce, and as such there is no valid argument for the delay.

There is significant prejudice in delaying the disclosure, including the ability to uncover witnesses, take their deposition, and discover addition facts. For example, Plaintiff DAVIS has already uncovered one witness that stated that he noticed the relevant broom leaning against the wall long before the accident and felt as though the broom created a hazard. *See* Affidavit of Josh Berry attached hereto as Exhibit "C".

In addition, if the Court delays the disclosure of the videotape until after the Plaintiff's deposition, the store employees and managers, would reap the benefits of viewing the tape before their depositions are taken, shifting the scales of justice to the disadvantage of Plaintiff DAVIS. *See Sowell*, at p. 8.

### IV.   Video Reflects Actual Occurrence

Many judges have long held the belief that:

> The video reflects the actual occurrence of the accident. Viewing the video prior to the plaintiff's deposition may not only promote truthseeking but foster settlement in cases of disputed liability.

*McClure v. Publix*, 124 So.3d 998 (Fla. 4th DCA 2013).

### V.   Closing Argument

Finally, Plaintiff DAVIS leaves the Court with *Herrick v. Wilson*, 429 N.J. Super 402 (2011):

> The Court Rules do not allow parties to unilaterally pick and choose which discovery they will produce and in what order. A contrary interpretation would allow parties to manipulate the discovery process by withholding certain discovery in an effort to obtain a strategic advantage in the litigation . . . . To allow defendant to withhold this discovery would fundamentally change how pretrial discovery is conducted and allow parties to delay production of certain discovery to gain an upper hand in the litigation. There is simply no sound reason to treat the video surveillance at issue differently from other routine discovery such as prior statements or admissions made by a party. If defendant is permitted to withhold the video surveillance, it would open the floodgates of motion practice. Parties would begin to routinely refuse to produce all evidence that would be more beneficial to produce after depositions are conducted.
>
> . . .
>
> Defendant has expressed concerns that if the video surveillance in question is produced prior to plaintiffs' deposition, then plaintiffs' unfettered, independent recollection will "be forever tainted." This argument is not without merit. Nevertheless, the same argument could be advanced with respect to a practically limitless list of frequently produced discovery, including, but not limited to, police reports, witness statements, party admissions, emails, and photographs.... Allowing defendant to withhold the video surveillance until after plaintiffs' depositions would lead to a slippery slope where, potentially, all discovery could be withheld out of concern that the information/material may influence or alter a party's deposition testimony. Herrick at 406.

WHEREFORE, Plaintiff's request that the Court issue and Order compelling Defendant WAFFLE HOUSE to produce the video within ten days and prior to Defendant DAVIS's deposition, and grant such other relief that this Court deems just and proper.

Dated: June 19, 2015

Respectfully submitted,

By: s/Matthew Sean Tucker
Matthew Sean Tucker
Florida Bar No. 90047
Tucker IP
2515 Marina Bay Drive West, No. 202
Fort Lauderdale, FL 33312
Telephone: (954) 204-0444
Facsimile: (954) 358-4946
mtucker@tuckeriplaw.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: s/Matthew Sean Tucker